## Berkey and Wife *versus* Auman.

Under an arrangement between plaintiff and her daughter and son-in-law, the details of which were disputed, the latter moved on a farm owned by plaintiff. In general terms the arrangement was that the daughter and son-in-law were to live on the property and take care of and support plaintiff during her life, and at her death the daughter was to have the land. The plaintiff lived on the farm in pursuance of these terms until some disagreement arose when she moved away and gave her daughter and son-in-law notice to quit. Upon their refusal she brought an action of *trespass quare clausum fregit.* The evidence was conflicting as to whether by the terms of the contract defendants were to take and hold exclusive possession during the life of plaintiff. *Held,* that as the defendants had control of the farm and used it as their own, and had such lawful possession as authorized them to put in the crops, their right of possession did not, during the growth thereof, at once cease and determine, so as to make them liable in trespass for continuing there, although they failed to fulfil all the terms of their contract thereafter.

October 28th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ.   PAXSON and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Somerset county:* Of October and November Term 1879, No. 205.

Trespass *quare clausum fregit* by Elizabeth Auman against Abraham Berkey and Priscilla Berkey, his wife.

The plaintiff was an aged widow lady, and prior to the 1st of April 1876, had been living alone on a small tract of land in Somerset township, of which she was the owner.  By some kind of arrangement she induced the defendants, her son-in-law and daughter, to dispose of their land and move into her house and board her.  There was some dispute as to the exact terms of the contract under which the defendants took possession.  The plaintiff claimed that she was to retain control of the land during her life, and that the defendants were to live in the house and have enough land to raise potatoes and for gardening purposes, and were only to cut the fallen timber.  The defendants alleged that they were to have immediate and exclusive possession of the entire place, but were to keep the old lady during the rest of her life.  About some of the terms of the contract there was no controversy: 1. The contract was made between the plaintiff and her daughter, Mrs. Berkey.  2. Sooner or later the title was to vest in Mrs.

10 NORRIS—31

[Berkey and Wife *v.* Auman.]

Berkey. 3. The defendants were to move into the house and board the plaintiff during her life.

After the defendants had been living on the place several months the plaintiff went away, and then brought this action of trespass. The only alleged acts of trespass were done by Abraham Berkey, and consisted of the ploughing of one or two fields, and the cutting of a few trees, but the trees that were cut were used in repairs about the place. All the acts complained of were done during the time the plaintiff was boarding with the defendants.

The plaintiff, inter alia, submitted the following points, to which are appended the answers of the court:—

3. If the jury believe that defendants purchased from plaintiff the premises by parol contract, and that they were to have the same on condition that they would keep and maintain her well during her lifetime, and that they were to move in the house with her, and if they did not treat her as became her age and condition in life, and treated her so that she could not live with them, defendants broke the contract, and their right to be on the premises at once ceased and determined, and plaintiff having the legal title and being in possession, can maintain this action of trespass against defendants.

Ans. "Affirmed. There is little, if any, testimony, outside the plaintiff's testimony, to show that the defendants failed to keep the plaintiff properly. The evidence of the defendants and of the neighbors is that she was well provided for and kindly treated. The facts of the case, however, we leave for your determination." (Second assignment of error.)

5. If the defendants, under the contract, were tenants at will, the cutting of timber trees and other acts of defendants were trespasses, and they are liable for damages in this action.

Ans. "Affirmed." (Third assignment.)

Verdict for plaintiff, when defendants took this writ, and alleged that the court erred, inter alia, as set forth in the above assignments of error.

*Coffroth & Ruppel*, for plaintiffs in error.—The alleged acts of trespass were all committed during the time the plaintiff boarded with the defendants, and while friendly relations existed between them, and in affirming the points the attention of the jury ought to have been called to this fact.

The Six Carpenters' Case, 1 Sm. Lead. Cas. 62, established a distinction between the abuse of an authority conferred by law and one obtained by contract. In the first, the tort-feasor becomes a trespasser *ab initio*, while in the latter the mere abuse of a privilege does not render the party liable to an action of trespass. See Boults *v.* Mitchell, 3 Harris 378. When another person has the alleged occupancy, the exhibition of a paramount title is not suffi-

[Berkey v. Auman.]

cient to sustain trespass: Caldwell v. Walter, 10 Harris 380; Clark v. Smith, 1 Casey 138; Weitzel v. Marr et al., 10 Wright 463; Williams v. Dougherty, 6 Phila. 156; Narehood v. Wilhelm, 19 P. F. Smith 67.

Before this action was brought, the plaintiff had left the premises and taken up her abode elsewhere, and consequently had no sort of possession; and if she wished to dispossess the defendants, her remedy was by a different form of action.

*Valentine Hay* and *John H. Uhl*, for defendant in error.—In their answer to the third point the court are sustained by authority: 2 Waterman on Trespass 368, and Rollins v. Riley, 44 N. H. 9. This latter case is very analogous to the one at bar.

The affirmance of plaintiffs' fifth point was clearly right. If defendants were tenants at will the cutting of timber trees and other acts unauthorized by such a tenancy, was a determination of the tenancy and their acts were trespasses and they were liable in damages: 1 Chitty on Pleading, p. 178 (note); Taylor's Landlord & Tenant, pp. 503, 520, 572–5; Boults v. Mitchell, 3 Harris 371.

Mr. Justice MERCUR delivered the opinion of the court, January 5th 1880.

This is an action of trespass *quare clausum fregit*, brought by the defendant in error against her son-in-law and daughter. The alleged trespass consisted in cutting four trees standing on a piece of land containing about fifteen acres, the legal title to which was in the defendant in error, and also in ploughing up some meadow land thereon. Under some arrangement between the parties, the precise details of which are in dispute, the plaintiffs in error moved on to the land in the spring of 1876. In general terms, it may be said they were to live on the property, take care of and support Mrs. Auman during her life, and, at her death, Mrs. Berkey was to have the land. The evidence is conflicting as to whether, by the terms of the contract, the plaintiffs in error were to take and hold the exclusive possession during the life of Mrs. Auman. As matter of fact they appear to have so taken it, and for some months thereafter Mrs. Auman lived with them, and was supported by them. During the year of 1876 they cultivated the improved land, putting in oats, corn, potatoes and buckwheat. They also improved the property to the value of $200 or more, by clearing the fields and fixing the house, out-buildings and fences. While the plaintiffs in error were thus occupying the house and cultivating the lands, and Mrs. Auman living with them, they committed the acts complained of. The trees appear to have been cut to use the lumber made therefrom in repairing the fences and buildings on the premises. Mrs. Auman remained with them until after oats harvest of the same year, when she became dissatisfied, gave them

[Berkey *v.* Auman.]

notice to leave, and then she left and moved off the farm, taking most of her property with her, but leaving a few household goods. The plaintiffs in error remained in possession, and were still there when this suit was brought.

In affirming the point covered by the second assignment, the court assumed the defendant in error to be in possession, and held that if the plaintiffs in error failed to fulfil their contract, their right to remain on the premises at once ceased and determined. In this there was error. The actual possession was a matter of fact to be determined by the jury. In addition to the evidence of the plaintiffs in error, that they took possession under the parol contract, the evidence of the defendant in error herself, as well as that of Levi Adams, a witness called by her, as to the manner in which they occupied the farm, was amply sufficient to submit the question of their actual possession to the jury. She testified to Mr. Berkey having ploughed and put in the crops stated, and added: " I did not order him to do it. I gave him no permission to plough." Thus clearly showing he was not acting under her authority or instructions, but under his own claim of right. Adams, on cross-examination testified that he was there often ; that Berkey " was farming while she was there; she made no objections. He had the control of the farm, and used it as his." Still further, if the plaintiffs in error had such a lawful possession as authorized them to put in the crops, their right of possession did not, during the growth thereof, at once cease and determine, so as to make them liable in trespass for continuing there, although they failed to fulfil all the terms of their contract thereafter. Even if tenants at will, they were entitled to a reasonable time to take the emblements therefrom. She could not determine the estate after they had sowed, and before they had reaped, so as to deprive them of the crops. The possession of the land on which the crops were growing continued in the plaintiffs in error until the time for harvesting them arrived : 4 Kent's Com. 3 ; Clark *v.* Smith, 1 Casey 137. Any notice which she may have given them to leave before a reasonable and proper time for harvesting the crops, did not destroy their right of possession. If then they were in possession, and she out, trespass cannot be maintained. The second and third assignments are substantially sustained. We see no merit in the remaining assignments.

Judgment reversed and a *venire facias de novo* awarded.